# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MULLINS' WHEY, INC.,

      Plaintiff,

  v.                                       Case No. 04-C-0130

McSHARES, INC., et al.,

      Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on a motion for summary judgment concerning an issue of insurance coverage. The underlying action is for breach of contract, and federal jurisdiction arises under 28 U.S.C. § 1332 based on the diverse citizenship of the parties. On November 19, 2004, the court granted Intervening Plaintiff Acuity, A Mutual Insurance Company's motion to intervene in this case for purposes of seeking a declaratory judgment determining its defense and indemnification duties to Plaintiff Mullins' Whey, Inc. Acuity has now moved for summary judgment on both coverage and defense issues. For the following reasons, Acuity's motion for summary judgment will be denied.

## FACTS

Mullins is in the business of selling whey protein concentrate and whey protein isolate. (Countercl. ¶ 6.) Between December 2002 and February 2003, Mullins sold whey protein concentrate to Defendant and Counterclaimant Next Proteins, Inc. (Countercl. ¶ 8.) Next incorporated some of this concentrate into its own food product. Next alleges that it subsequently

discovered that the concentrate contained benzene and other chemicals that rendered it unfit for human consumption. (Countercl. ¶ 18.) Next's product allegedly "was ruined and unusable as a result of the contaminated Mullins whey protein concentrate. Next Proteins did not release that finished product to the public." (Countercl. ¶ 10.) Instead, Next demanded reimbursement of the purchase price of the concentrate and additional expenses associated with its contaminated product from Mullins. (Countercl. ¶¶ 11-12.) When Mullins refused, Next filed a counterclaim for breach of contract and breach of express and implied warranties. Next alleges that its damages total over $150,000, not including the cost of replacing Mullins' product. (Countercl. ¶ 14.) The $150,000 figure allegedly includes $100,000-140,000 in reimbursement sought for the cost of the defective concentrate.[1] (*Id.*)

Mullins tendered defense of Next's counterclaim to its comprehensive general liability (CGL) insurer, Acuity. Acuity agreed to defend Mullins but reserved the right to contest coverage, which it then did by intervening in this action. Acuity now argues that it has neither a duty to defend Mullins against Next's counterclaim nor a duty to indemnify Mullins for any liability to Next.

## ANALYSIS

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Wantz v. Experian Information Sys.*, 386 F.3d 829, 832 (7th Cir. 2004); Fed. R. Civ. P. 56. Summary

---

[1]It appears that the actual amount of reimbursement sought may be less than the $100,000-140,000 alleged in the counterclaim. (Pohle Decl. ¶ 21. ) Mullins concedes that the CGL provides no coverage for the cost of the defective concentrate. (Resp. at 16.)

judgment can be particularly appropriate in contract actions where the disposition of the case involves the interpretation of a contract. *Tingstol Co. v. Rainbow Sales Inc.*, 218 F.3d 770, 771-72 (7th Cir. 2000).

Under Wisconsin law,[2] the construction of a contract is a question of law. *Elkhart Lake's Road Amer. v. Chicago Hist. Races*, 158 F.3d 970, 972 (7th Cir. 1998). Insurance policies are contracts and the court's duty in interpreting an insurance policy, as it is in interpreting any contract, is to determine and give effect to the intent of the contracting parties. *Wisconsin Label Corp. v. Northbrook Property & Cas. Ins. Co.*, 607 N.W.2d 276, 282 (Wis. 2000). Where the terms of a contract are clear and unambiguous, the court must interpret it according to its literal terms. *Gorton v. Hostak, Henzl & Bichler, S.C.*, 577 N.W.2d 617, 622-23 (Wis. 1998). But when the terms of the contract are reasonably susceptible to more than one construction, the contract is ambiguous and the court attempts to ascertain the intent of the parties. *Id.* Insurance polices are construed as they would be understood by a reasonable person in the position of the insured. *Kremers-Urban Co. v. American Employers Ins. Co.*, 351 N.W.2d 156, 163 (Wis. 1984). However, policies of insurance should not be interpreted to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium. *Wisconsin Label*, 607 N.W.2d at 283.

Wisconsin courts follow a three-step procedure in determining whether coverage exists under a particular policy:

> First, we examine the facts of the insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage. If it is clear that the policy was not intended to cover the claim asserted, the analysis ends there. If the claim triggers the initial grant of coverage in the insuring agreement, we next examine the various exclusions to see whether any of them preclude coverage of the present claim. Exclusions are narrowly or strictly construed against the insurer if their effect

---

[2]The parties' briefs do not explicitly address what law is applicable to interpretation, but assume that Wisconsin law applies.

is uncertain. . . . .We analyze each exclusion separately; the inapplicability of one exclusion will not reinstate coverage where another exclusion has precluded it. Exclusions sometimes have exceptions; if a particular exclusion applies, we then look to see whether any exception to that exclusion reinstates coverage. An exception pertains only to the exclusion clause within which it appears; the applicability of an exception will not create coverage if the insuring agreement precludes it or if a separate exclusion applies.

*American Family Mut. Ins. Co. v. American Girl, Inc.*, 673 N.W.2d 65, 73 (Wis. 2004) (citations omitted).

CGL policies like the one at issue in this case impose two duties on the insurer: the duty to defend its insured and the duty to indemnify its insured against covered losses. *Red Arrow Products Co. v. Employers Ins. of Wausau*, 607 N.W.2d 294 (Wis. Ct. App. 2000). The duty to defend is broader than the duty to indemnify because the duty to defend is triggered by arguable, as opposed to actual, coverage. *Newhouse v. Citizens Sec. Mut. Ins. Co.*, 501 N.W.2d 1, 5 (Wis. 1993). In Wisconsin, "an insurer has a duty to defend a suit where the complaint alleges facts which, if proven at trial, would give rise to the insurer's liability under the terms of the policy." *Doyle v. Engelke*, 219 Wis. 2d 277, 283, 580 N.W.2d 245 (1998). Whether an insurer has a duty to defend is properly determined at the outset of litigation. By contrast, "[t]he duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suits." *Nationwide Ins. Co. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995).

The CGL policy at issue obligates Acuity to "pay those sums that [Mullins] becomes legally obligated to pay because of bodily injury or property damage" to which it applies. (Shull Decl. ¶ 5, Ex. 1 at 1.) The policy applies only if "the bodily injury or property damage is caused by an occurrence that takes place in the coverage territory." (*Id.*) The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 12.)

Acuity first argues that its policy provides no coverage because a contract claim is not an "occurrence" as defined in the policy. Next's contract claims against Mullins are not, of course, an occurrence, and Mullins makes no such argument. Rather, Mullins argues that an occurrence caused property damage to Next's property. Acuity's contention, put more accurately, is that CGL policies such as the one in this case cover only tort claims, and exclude coverage of contract claims. The Wisconsin Supreme Court rejected this argument in a case involving virtually identical language in a CGL policy:

> The CGL policy's basic coverage language does not distinguish between losses actionable in tort and losses actionable under contract. . . . [T]he definition of occurrence in the CGL policy does not refer to the legal category of the claim; there is no language limiting the term to those occurrences that are actionable only in tort.

*American Family Mut. Ins. Co. v. American Girl, Inc.*, 673 N.W.2d at 77 n. 6. Accordingly, nothing in the policy's definition of "occurrence" excludes coverage of Next's claims.

Acuity next argues that the "impaired property exclusion" in the CGL policy excludes coverage of Next's claims. The CGL policy excludes coverage for:

> Property damage to impaired property or property that has not been physically injured, arising out of:
> (1) A defect, deficiency, inadequacy or dangerous condition in your product or your work; or
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

(Ex. 1 at 4.) The policy defines "impaired property" as

> tangible property, other than your product or your work, that cannot be used or is less useful because:
>
> a. It incorporates your product or your work that is known or thought to be defective, deficient, inadequate, or dangerous; or
>
> b. You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:

5

a. The repair, replacement, adjustment, or removal of your product or your work; or

b. Your fulfilling the terms of the contract or agreement.

(Ex. 1 at 11.) The complaint plainly alleges that Next's tangible property could not be used because it incorporated Mullins' defective product. Nothing in the complaint (or, for that matter, anywhere else in the record) suggests that Next's property could be restored to use by "the repair, replacement, adjustment, or removal of [Mullins' product] or [Mullins'] fulfilling the terms of the contract or agreement." To the contrary, Next's property "was ruined and unusable as a result of the contaminated Mullins whey protein concentrate." (Countercl. ¶ 10.) Next's property is therefore not impaired property, and the exclusion is inapplicable.

Acuity next argues that the "recall of products exclusion" excludes coverage for all of Next's claims. The CGL policy provides no coverage for:

> Damages claimed for any loss, costs, or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
> (1) Your product;
> (2) Your work;
> (3) Impaired property;
> if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

(Ex. 1 at 4.) Acuity contends that Mullins' concentrate underwent a withdrawal or recall when Next withdrew food product incorporating Mullins' product from the market. However, Next is claiming damages for the removal and disposal of its product, not Mullins'. And as discussed above, Next's property is not "impaired property." Insofar as Acuity contends that Next's product, which incorporates Mullins' product, is "[Mullins'] product" or "[Mullins'] work," its proposed interpretation would render the reference to impaired property superfluous, since a recall of any property incorporating Mullins' product would trigger the exclusion, whether or not the property

6

was impaired property. "Interpretations which render insurance contract language superfluous are to be avoided where a construction can be given which lends meaning to the phrase." *Bulen v. West Bend Mutual Ins. Co.*, 371 N.W.2d 392, 394 (Wis. Ct. App. 1985). Moreover, nothing in the policy's definitions of "your product" or "your work" indicates that the terms were meant to include the products of others when they incorporate Mullins' product.[3]

---

[3]The policy defines "your product" to mean:

a. Any goods or products other than real property, manufactured, sold, handled, distributed or disposed of by:
(1) You;
(2) Others trading under your name; or
(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

Your product includes:

a. Warranties or representation made at any times with respect to the fitness, quality, durability, performance or use of your product, and

b. The providing or failure to provide warnings or instructions.

Your product does not include vending machines or other property rented to or located for the use of others but not sold.

(Ex. 1 at 13.) The policy defines "your work" to mean:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes:

a. Warranties or representation made at any times with respect to the fitness, quality, durability, performance or use of your work, and

b. The providing or failure to provide warnings or instructions.

(Ex. 1 at 14.)

7

Accordingly, the court concludes that the exclusion does not apply.

Acuity also argues that its "contractual liability exclusion" excludes coverage here. The CGL policy provides no coverage for "Bodily Injury or Property Damage for which [Mullins] is obligated to pay damages by reasons of the assumption of liability in a contract or agreement." (Ex. 1 at 2.) The Wisconsin Supreme Court, construing an identical provision, concluded that "the contractually-assumed liability exclusion applies where the insured has contractually assumed the liability of a third party, as in an indemnification or hold harmless agreement; it does not operate to exclude coverage for any and all liabilities to which the insured is exposed under the terms of the contracts it makes generally." *American Family*, 673 N.W.2d at 81. Next's claims do not arise from an indemnification or hold harmless agreement, and the exclusion is therefore inapplicable.

## CONCLUSION

For the foregoing reasons, the court cannot conclude that Acuity does not have a duty to defend Mullins or that it will not have a duty to indemnify Mullins for at least some of the damages in Next's claims.[4] Acuity's motion for summary judgment will therefore be **DENIED.**

The court did not find it necessary to consider the arguments raised in Mullins' proposed sur-reply brief in ruling on Acuity's motion. Mullins' motion for leave to file a sur-reply will therefore be **DENIED.**

**SO ORDERED.**

Dated this ___10th___ day of May, 2005.

                                        s/ William C. Griesbach
                                        William C. Griesbach
                                        United States District Judge

---

[4]Final adjudication of Acuity's duty to indemnify is premature at this stage.